## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA INDIANAPOLIS DIVISION

JEREL WATSON and
DEBBIE WATSON,

Plaintiffs,

v.

EXACTECH, INC., and EXACTECH, US,

Defendants.

Case No.

## COMPLAINT AND JURY DEMAND

Plaintiffs, Jerel Watson ("Jerry") and Debbie Watson ("Debbie"), bring this action for personal injuries suffered as a direct and proximate result of the misconduct of Defendant Exactech, Inc., and Defendant Exactech US, Inc., (collectively, "Defendants" or "Exactech") and demands a trial by jury. In support of his Complaint, Plaintiffs allege as follows:

## THE PARTIES

1. Plaintiffs were at all times relevant herein citizens and residents of Hamilton County, Indiana.

2. Defendant Exactech, Inc. And Exactech, US are Florida corporations with their principal place of business at 2320 NW 6th Court, Gainesville, Florida 32653.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between

the parties.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to this claim occurred in the Southern District of Indiana.

5. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because Defendant has sufficient minimum contacts with the State of Indiana and intentionally availed itself of the market within Indiana through the promotion, sale, marketing, and distribution of its products.

## FACTUAL BACKGROUND

6. From 2005 to 2022 Defendants manufactured, marketed, and sold hip replacement systems, including the Exactech Novation GXL Hip Replacement System with a Connexion GXL Liner.

7. Defendants alleged that the Connexion GXL Liner would improve the wear resistance and longevity of the device, when in fact the opposite was true. The Connexion GXL Liner exhibits higher than expected rates of failure that necessitates early revision.

8. Exactech retained sole responsibility for safety and effectiveness of the Connexion GXL Liners specifically during the period it was marketed and sold.

9. In 2016, Plaintiff underwent a left total hip arthroplasty surgical procedure using the Novation GXL Hip Replacement Implant with a Connexion GXL Liner performed by Dr. Tony Feher at Franciscan St. Francis in Hamilton County, Indiana.

10. In December 2022, Plaintiff was informed of the recall of the Connexion GXL component in his hip replacement system.

11. On April 24, 2023, Plaintiff underwent a left total hip revision of the recalled implant.

12. Total Hip Arthroplasty ("THA") is the term used to describe the surgical procedure during which a patient's natural hip anatomy is replaced with synthetic components. THA is also commonly referred to as "hip replacement surgery."

13. A synthetic hip replacement system implanted during a THA procedure generally has four main components: 1) Acetabular shell; 2) Acetabular liner; 3) Femoral head; and 4) Femoral stem.

14. Beginning in 2005, Defendant began to market enhanced GXL Acetabular Polyethylene Liners which it claimed provided less wear over time when compared to other hip replacement systems.

15. On June 29, 2021, Exactech initiated a Class II recall of the Exactech Connexion GXL Acetabular Polyethylene Liners due to premature prosthesis wear. On August 11, 2022, Exactech expanded the recall by 40,000 additional hip devices due to packaging problems that cause the liners to become oxidized prior to and after implantation into the body, which can lead to both accelerated wear and bone loss, and/or component fatigue cracking/fracture, all leading to corrective revision surgery.

16. Prior to June 29, 2021, Exactech had noticed, through product complaint data, of the higher-than-normal rates of early failure of the Connexion GXL Liners observed in patients.

17. Exactech's claims that the Connexion GXL Liner would have less wear and be at a level that would not be problematic for patients, were false and misleading and were not supported by unbiased, sound scientific testing.

As the number of reported failures continued to increase, Exactech began to design and develop a polyethylene liner that was manufactured and/or subjected to a different treatment than the Connexion GXL Liners.

18. Prior to offering its Connexion GXL Liner for distribution or sale in the United States, Exactech did not adequately test its design for polyethylene wear or the biological effect of polyethylene wear particles on the body after implantation in patients.

## CAUSES OF ACTION

## COUNT I – STRICT LIABILITY – MANUFACTURING DEFECT

19. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

20. At all relevant times, Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed, or sold the Novation GXL Hip Replacement Implant with a Connexion GXL Liner for implantation into patients, such as Plaintiff, by orthopedic surgeons in the United States.

21. Exactech had a duty to manufacture, pack, and distribute the Novation GXL Hip Replacement Implant with a Connexion GXL Liner, including their component parts, in a manner that prevented unreasonable risk of harm or injury to patients, including Plaintiff.

22. Exactech knew (or reasonably should have known) that its Novation GXL Hip Replacement Implant with a Connexion GXL Liner s were defective as manufactured.

23. The Novation GXL Hip Replacement Implant with a Connexion GXL Liner, as manufactured, were not reasonably safe as manufactured, packaged, or distributed by Exactech.

24. The Novation GXL Hip Replacement Implant with a Connexion GXL Liner, including their component parts, were defective as manufactured.

25. The manufacturing defects in the Novation GXL Hip Replacement Implant with a Connexion GXL Liner existed when the devices left Exactech's control.

26. Plaintiff's doctors implanted the Novation GXL Hip Replacement Implant with a Connexion GXL Liner in the manner in which it was intended and recommended to be used, making such use reasonably foreseeable to Exactech.

27. The Novation GXL Hip Replacement Implant with a Connexion GXL Liner, including their component parts, which were manufactured, packaged, or distributed by Exactech, reached patients, like Plaintiff, without substantial change in condition.

28. Plaintiff could not, by the exercise of reasonable care, have discovered the manufacturing defect and perceived its dangers or avoided injury.

29. Exactech is strictly liable for the defective manufacture of its Novation GXL Hip Replacement Implant with a Connexion GXL Liner, the distribution, marketing, or sale of the defectively manufactured Novation GXL Hip Replacement Implant with a Connexion GXL Liner and the injuries sustained by Plaintiff.

30. As a direct and proximate result of one or more of these wrongful acts or omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature. These injuries required medical treatment and will require ongoing medical treatment, resulting in significant past and future medical expenses. Additionally, Plaintiff suffered and will continue to suffer economic losses, loss of normal life, and physical and mental pain and suffering.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post- judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## COUNT II – STRICT LIABILITY – DESIGN DEFECT

31. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

32. At all relevant times, Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed, or sold the Novation GXL Hip Replacement Implant with a Connexion GXL Liner for implantation into patients, such as Plaintiff, by orthopedic surgeons in the United States.

33. Exactech had a duty to develop, design, and test both the Novation GXL Hip Replacement Implant with a Connexion GXL Liner and their component parts, including the respective packaging of each, to produce a product that did not present an unreasonable risk of harm or injury to patients, including Plaintiff.

34. Exactech knew (or reasonably should have known) that the Novation GXL Hip Replacement Implant with a Connexion GXL Liner, as designed, presented an unreasonable risk of harm or injury to patients, including Plaintiff.

35. Exactech knew (or reasonably should have known) that the Novation GXL Hip Replacement Implant with a Connexion GXL Liner were not reasonably safe for its expected, intended, or foreseeable uses as designed by Exactech.

36. As alleged herein, Exactech knew or had reason to know that the Novation GXL Hip Replacement Implant with a Connexion GXL Liner caused an increased risk of harm to patients, like Plaintiff, due to the Novation GXL Hip Replacement Implant with a Connexion GXL Liner's propensity to undergo substantial early polyethylene wear, component loosening, or other failure causing serious complications, including grinding, swelling, tissue damage, instability, osteolysis, bone loss and other injuries, as well as the need for revision surgery in patients.

37. The Novation GXL Hip Replacement Implant with a Connexion GXL Liner, including their component parts and corresponding packaging, were defective as designed.

38. The design defects in the Novation GXL Hip Replacement Implant with a Connexion GXL Liner

existed when the devices left Exactech's control.

39. Plaintiff's doctors implanted the Novation GXL Hip Replacement Implant with a Connexion GXL Liner in the manner in which it was intended and recommended to be used, making such use reasonably foreseeable to Exactech.

40. The Novation GXL Hip Replacement Implant with a Connexion GXL Liner, including Their component parts, which were manufactured, packaged, or distributed by Exactech, reached patients, like Plaintiff, without substantial change in condition.

41. Plaintiff could not, by the exercise of reasonable care, have discovered the design defect and perceived its dangers or avoided injury.

42. Exactech is strictly liable for the defective design of its Novation GXL Hip Replacement Implant with a Connexion GXL Liner, the distribution, marketing, or sale of the defectively manufactured Novation GXL Hip Replacement Implant with a Connexion GXL Liner and the injuries sustained by Plaintiff.

43. As a direct and proximate result of one or more of these wrongful acts or omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature. These injuries required medical treatment and will require ongoing medical treatment, resulting in significant past and future medical expenses. Additionally, Plaintiff suffered and will continue to suffer economic losses, loss of normal life, and physical and mental pain and suffering.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post- judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## COUNT III – STRICT LIABILITY – FAILURE TO WARN

44. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully

set forth herein and further alleges as follows:

45. At all relevant times, Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed, or sold the Novation GXL Hip Replacement Implant with a Connexion GXL Liner for implantation into patients, such as Plaintiff, by orthopedic surgeons in the United States.

46. Exactech had a duty to provide adequate warnings and instructions regarding the Novation GXL Hip Replacement Implant with a Connexion GXL Liner (and their use) so that its systems did not present an unreasonable risk of harm or injury to patients, including Plaintiff.

47. Exactech knew or reasonably should have known and been aware that the Novation

48. GXL Hip Replacement Implant with a Connexion GXL Liner and its packaging contained inadequate warnings and instructions.

49. The Novation GXL Hip Replacement Implant with a Connexion GXL Liner and their corresponding packaging are not reasonably safe as labeled, distributed, marketed, delivered or sold by Exactech.

50. The Novation GXL Hip Replacement Implant with a Connexion GXL Liner were defective and unreasonably dangerous when they entered the stream of commerce and were received by Plaintiff and Plaintiff's doctors, because the warnings in the instructions for use, operative techniques, directions, marketing and promotional materials, advertisements, white papers, and other communications provided by Exactech or its sales force to doctors and patients with or about the Novation GXL Hip Replacement Implant with a Connexion GXL Liner failed to adequately convey the potential risks and side effects of the Novation GXL Hip Replacement Implant with a Connexion GXL Liner and the dangerous propensities of the devices, which risks Exactech knew (or reasonably should have known).

8

51. Exactech further failed to adequately disclose the devices' propensity to undergo substantial early polyethylene wear, component loosening or other failure causing serious complications, including grinding, swelling, tissue damage, instability, osteolysis, bone loss and other injuries, as well as the need for revision surgery in patients.

52. The instructions for use, operative techniques, directions, marketing and promotional materials, advertisements, white papers, and other communications regarding the Novation GXL Hip Replacement Implant with a Connexion GXL Liner were additionally defective because they did not provide instructions concerning how—if at all—the risks associated with the Novation GXL Hip Replacement Implant with a Connexion GXL Liner could be avoided, minimized, detected, or treated.

53. The inadequate warnings for the Novation GXL Hip Replacement Implant with a Connexion GXL Liner existed when the devices left Exactech's control

54. Plaintiff's Novation GXL Hip Replacement Implant with a Connexion GXL Liner system reached Plaintiff (and Plaintiff's doctor) without substantial change in its condition.

55. Plaintiff's doctor followed the instructions provided by Exactech with regard to the implantation of his Novation GXL Hip Replacement Implant with a Connexion GXL Liner System.

56. Plaintiff (and Plaintiff's doctor) could not, by the exercise of reasonable care, have discovered these defects and perceived its dangers or avoided injury.

57. Exactech is strictly liable for providing inadequate warnings accompanying the Novation GXL Hip Replacement Implant with a Connexion GXL Liner and their component parts, including the respective packaging of each.

58. As a direct and proximate result of one or more of these wrongful acts or omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature. These injuries required medical treatment and will require ongoing medical treatment, resulting in significant past and future medical expenses. Additionally, Plaintiff suffered and will continue to suffer

economic losses, loss of normal life, and physical and mental pain and suffering.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post- judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## COUNT IV – NEGLIGENCE

59. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

60. Exactech designed, tested, developed, manufactured, labeled, packaged, marketed, distributed, or sold the Novation GXL Hip Replacement Implant with a Connexion GXL Liner s for implantation into patients, such as Plaintiff, by orthopedic surgeons in the United States.

61. At all relevant times, Exactech had a duty to exercise reasonable care in its design, manufacture, labeling, distribution, and sale of its Novation GXL Hip Replacement Implant with a Connexion GXL Liner.

62. As a medical device manufacturer, Exactech owed this duty of reasonable care not only to patients, like Plaintiff, but also to doctors, like Plaintiff's doctor.

63. At all relevant times, and as discussed above, Exactech knew (or reasonably should have known) of the hazards, risks, and dangers of the Novation GXL Hip Replacement Implant with a Connexion GXL Liner.

64. Exactech knew (or reasonably should have known) that its misconduct with respect to the Novation GXL Hip Replacement Implant with a Connexion GXL Liner was likely to cause harm to patients, like Plaintiff.

65. As described above, Exactech failed to exercise reasonable care with respect to its design, manufacture, labeling, distribution, and sale of its Novation GXL Hip Replacement Implant with a Connexion GXL Liner. More specifically, Exactech failed to:

a. reasonably and appropriately manufacture the Novation GXL Hip Replacement Implant with a Connexion GXL Liner so to avoid an unreasonable risk of harm to patients;

b. reasonably and appropriately package the Novation GXL Hip Replacement Implant with a Connexion GXL Liner so to avoid an unreasonable risk of harm to patients;

c. reasonably and appropriately distribute and store the Novation GXL Hip Replacement Implant with a Connexion GXL Liner so to avoid an unreasonable risk of harm to patients;

d. reasonably and appropriately design the Novation GXL Hip Replacement Implant with a Connexion GXL Liner so to avoid an unreasonable risk of harm to patients;

e. reasonably and appropriately label the Novation GXL Hip Replacement Implant with a Connexion GXL Liner so to avoid an unreasonable risk of harm to patients; and

f. were otherwise negligent.

66. As a direct and proximate result of one or more of these wrongful acts or omissions of Exactech, Plaintiff suffered profound injuries that are permanent and continuing in nature. These injuries required medical treatment and will require ongoing medical treatment, resulting in significant past and future medical expenses. Additionally, Plaintiff suffered and will continue to suffer economic losses, loss of normal life, and physical and mental pain and suffering.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with pre-judgment and post-judgment interest, costs of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## PUNITIVE DAMAGES

67. Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows:

68. Exactech's misconduct describe herein consisted of gross negligence, recklessness, oppression, fraud, or malice, and was done with advance knowledge, willful and wanton disregard for the safety and health of Plaintiff and others, or ratification by Exactech's officers, directors, or managing agents.

69. Despite its knowledge that the Novation GXL Hip Replacement Implant with a Connexion GXL Liner were failing at higher rates and causing serious injuries, Exactech chose profits over the safety of patients when they sold and marketed a device posing significant health risks.

70. Despite having sufficient knowledge to appreciate the risks related to the propensity of Exactech's Novation GXL Hip Replacement Implant with a Connexion GXL Liner to fail—which Defendants knew was likely to result in serious injuries—Exactech intentionally and recklessly failed to warn patients, doctors, or the general public.

71. Despite having sufficient knowledge to appreciate the risks related to the propensity of Exactech's Novation GXL Hip Replacement Implant with a Connexion GXL Liner to fail—which Defendants knew was likely to result in serious injuries—Exactech chose not to initiate a recall until recently.

72. Exactech's decisions with respect to its defective Novation GXL Hip Replacement Implant with a Connexion GXL Liner systems show a conscious indifference to the health and safety of the millions of patients.

73. Instead of deciding to better understand this failure and to warn the public, Exactech downplayed and recklessly disregarded its knowledge of the defective nature of the Novation GXL Hip Replacement Implant with a Connexion GXL Liner' potential for

causing serious injuries. Instead of releasing truthful information, correcting the defect, or providing adequate warnings, Exactech chose to instead disseminate misleading information regarding the safety (and failure rates) of its systems in an effort to mislead patients, doctors, and the public.

74. As a result of Exactech's own misconduct, both Exactech, Inc. and Exactech US, Inc., are liable for punitive damages in an amount to be determined by a jury.

## PRAYER FOR RELIEF

75. Plaintiff respectfully requests the following damages be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate Plaintiff:

a. Plaintiff's medical expenses, physical pain and suffering, and other compensatory damages to be proven at trial;

b. Damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, loss of consortium, and other non-economic losses sustained as a result of Exactech's misconduct;

c. Past, present, and future out-of-pocket costs, lost income, revenue, profits, or business opportunity, lost earning capacity, and costs related to medical treatment which have or may be recommended for Plaintiff;

d. Attorney's fees, expenses, and recoverable costs incurred in connection with this action;

e. Plaintiff's Loss of Enjoyment of Life;

f. Pre- and Post-Judgment Interest; and

g. Such other relief to which Plaintiff may be justly entitled.

/s/ Jeffrey O. Meunier
Jeffrey O. Meunier
Attorney No. 10298-29
Attorney for Plaintiff

## REQUEST FOR JURY TRIAL

The Plaintiffs request that the referenced cause be tried to a jury.

/s/ Jeffrey O. Meunier
Jeffrey O. Meunier #10298-29

Jeffrey O. Meunier
ATTORNEY AT LAW
320 South Rangeline Road
Carmel, Indiana 46032
(317) 575-0320
Attorney No. 10298-29